## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Denise W.,

        Plaintiff,

v.

Nancy A. Berryhill, *Acting Commissioner*
*of Social Security*,

        Defendant.

Case No. 17-cv-4592 (SER)

**ORDER**

Karl E. Osterhaut, Osterhaut Disability Law, LLC, 521 Cedar Way, Suite 200, Oakmont PA 15139, and Edward C. Olson, Disability Attorneys of Minnesota, 331 Second Avenue South, Suite 420, Minneapolis MN 55401 (for Plaintiff); and

Elvi D. Jenkins, Assistant Regional Counsel, Social Security Administration, 1301 Young Street, Suite A702, Dallas TX 75202 (for Defendant).

## I.   INTRODUCTION

Plaintiff Denise W. brings the present action, contesting Defendant Commissioner of Social Security's denial of her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–34, and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381. The parties filed cross-motions for summary judgment and consented to a final judgment from the undersigned pursuant to 28 U.S.C. § 636(c) and D. Minn. LR 7.2. For the reasons set forth below, the Court denies Plaintiff's motion and grants Defendant's motion.

## II.  BACKGROUND

### A.  Procedural History

Plaintiff filed the instant action for DIB and SSI in March 2014 and November 2014, respectively, alleging a disability onset date of August 15, 2007. Plaintiff alleges impairments of major depressive disorder, acute anxiety, attention deficit hyperactivity disorder, degenerative arthritis, and hearing loss. Plaintiff was found not disabled and that finding was affirmed upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge. A hearing was held and, on August 29, 2016, the ALJ issued a decision denying Plaintiff's claim for benefits. Plaintiff sought review of the ALJ's decision through the Appeals Council, which denied review. Plaintiff then sought review in this Court.

### B.  The ALJ's Decision

The ALJ found Plaintiff had the severe impairments of: obesity; osteoarthritis; trochanteric bursitis; major depressive disorder; and anxiety disorder. (Tr. 22). The ALJ next concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listing in 20 C.F.R. pt. 404, subpt. P, app. 1. (Tr. 22). The ALJ looked at Listings 12.04 (affective disorders) and 12.06 (anxiety related disorders). (Tr. 22–23). The ALJ determined Plaintiff has the residual functioning capacity ("RFC") to perform less than a full range of medium work, specifically limiting her to: lifting and/or carrying 30 to 35 pounds occasionally and 15 pounds or less frequently; sitting 6 hours in an 8-hour day; standing and/or walking for 6 hours in an 8-hour day; and finding that she

has 'moderate' limitations in social interaction, meaning social functioning is limited such that a person is performing at lower acceptable limits for most workplaces. As defined, she would be moderately limited in interacting consistently and appropriately with others, in getting along consistently with coworkers, and in accepting instruction or criticism from supervisors, thus limiting her to work involving only brief and superficial contact with others.

(Tr. 24). The ALJ determined Plaintiff is capable of performing her past work. (Tr. 28). Plaintiff was found not disabled from August 15, 2007 through the date of the ALJ's decision. (Tr. 29).

## III.   ANALYSIS

### A.  Legal Standard

Disability benefits are available to individuals determined disabled. 42 U.S.C. §§ 423(a)(1), 1381a; *accord* 20 C.F.R. §§ 404.315, 416.901. An individual is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a). This standard is met when a severe physical or mental impairment, or impairments, renders the individual unable to do her previous work or "any other kind of substantial gainful work which exists in the national economy" when taking into account her age, education, and work experience. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also* 20 C.F.R. § 404.1505(a). Disability is determined according to a five-step, sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

> To determine disability, the ALJ follows the familiar five-step process, considering whether: (1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could perform past relevant work; and if not, (5) whether she could perform any other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). In general, the burden of proving the existence of disability lies with the claimant. 20 C.F.R. § 404.1512(a); *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991).

If "substantial evidence" supports the findings of the Commissioner, then these findings are conclusive. 42 U.S.C. § 405(g). The Court's review of the Commissioner's final decision is deferential because the decision is reviewed "only to ensure that it is supported by substantial evidence in the record as a whole." *Hensley v. Barnhart*, 352 F.3d 353, 355 (8th Cir. 2003). The Court's task is "simply to review the record for legal error and to ensure that the factual findings are supported by substantial evidence." *Id.* This Court must "consider evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Burnside v. Apfel*, 223 F.3d 840, 843 (8th Cir. 2000). A court cannot reweigh the evidence or "reverse the Commissioner's decision merely because substantial evidence would have supported an opposite conclusion or merely because [a court] would have decided the case differently." *Harwood v. Apfel*, 186 F.3d 1039, 1042 (8th Cir. 1999).

Under 20 C.F.R. §§ 404.1527(c), 416.927(c), medical opinions from treating sources are weighed using several factors: (1) the examining relationship; (2) the treatment relationship, such as the (i) length of the treatment relationship and frequency

of examination and the (ii) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. If a treating source's medical opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it is given controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Treating sources are defined as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. §§ 404.1513(a), 416.913(a). "A treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination." *House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007). An ALJ "may give a treating doctor's opinion limited weight if it provides conclusory statements only." *Samons v. Astrue*, 497 F.3d 813, 818 (8th Cir. 2007) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1494 (8th Cir. 1995)). And "[a] treating physician's own inconsistency may . . . undermine his opinion and diminish or eliminate the weight given his opinions." *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)).

### B. The Opinions of Dr. Kefalas and Thomas

Plaintiff asserts that the ALJ erred in weighing Dr. Thomas Kefalas's August 2014 and March 2015 opinions, and therapist Cindy Lee Thomas's March 2016 opinion.[1]

---

[1] At the outset, the Court notes that Thomas is not considered an "acceptable medical source" but instead an "other source" that the ALJ *may* use as evidence to show the severity of Plaintiff's impairments. 20

On August 26, 2014, Dr. Thomas Kefalas completed a single-page medical opinion check-the-box form. (Tr. 372).[2] Dr. Kefalas indicated Plaintiff's diagnoses were: major depressive disorder, ADHD, generalized anxiety disorder, panic disorder, and personality disorder NOS. (Tr. 372). Plaintiff had temporary limitations of anxiety and sad mood and permanent limitations of difficulty staying on task and residual anxiety. (Tr. 372). Dr. Kefalas opined Plaintiff could not perform any employment in the foreseeable future. (Tr. 372).

On March 5, 2015, Dr. Kefalas completed a mental medical source statement. (Tr. 387–90). Dr. Kefalas noted he saw Plaintiff every other month and her mental diagnoses are major depressive disorder and ADHD. (Tr. 387, 385). Dr. Kefalas opined Plaintiff's prognosis was poor. (Tr. 387). Dr. Kefalas indicated no physical or medical condition contributed to or caused Plaintiff's mental impairments. (Tr. 387). Dr. Kefalas suggested Plaintiff's medications were ineffective and did not believe Plaintiff was exaggerating her symptoms. (Tr. 387).

In assessing Plaintiff's ability to sustain mental activities and a productive level of functioning at work or in a home environment, Dr. Kefalas opined Plaintiff had little or no restrictions in interacting appropriately with the general public, getting along with coworkers or peers, maintaining socially appropriate behavior, adhering to basic

---

C.F.R. §§ 404.1513(d)(1), 406.913(d)(1); *Lacroix v. Barnhart*, 465 F.3d 881, 886 (8th Cir. 2006). "In determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005); *Tindell v. Barnhart*, 444 F.3d 1002, 1005 (8th Cir. 2006).

[2] Attached to the opinion is a handwritten and signed note from Plaintiff, noting "I was recently informed I would be eligible for cash assistance from the state if my doctor completes a statement of my inability to work. Even though it was obtained for them, it should clarify my situation & help my claim." (Tr. 371).

standards of neatness and cleanliness, and being aware of normal hazards and taking appropriate precautions. (Tr. 387–88). Dr. Kefalas opined Plaintiff had moderate restrictions in carrying out very short and simple instructions, sustaining an ordinary routine without special supervision, working with others, making simple work-related decisions, asking simple questions or requesting assistance, accepting instructions and responding appropriately to criticism from supervisors, responding appropriately to changes in the work setting, and the ability to set realistic goals or make plans independently of others. (Tr. 387–88).

Dr. Kefalas opined Plaintiff had marked restrictions in remembering locations and work-like procedures, understanding and remembering simple instructions, understanding and remembering detailed instructions, carrying out detailed instructions, maintaining attention and concentration for more than two-hour segments, performing activities within a schedule or maintaining regular attendance, completing a normal work day and work week without interruptions from psychologically-based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods, traveling in unfamiliar places or using public transportation, and the ability to tolerate normal levels of stress. (Tr. 387–88). No documented deficiencies where objective testing would further explain Plaintiff's limitations were identified. (Tr. 388). Dr. Kefalas believed Plaintiff, during the work day, would need one to two unscheduled breaks every two hours because of her difficulty staying on task and tendency to get easily distracted; she also demonstrates the absence of a desire to complete tasks. (Tr. 389). Dr. Kefalas opined

that Plaintiff would be absent 3 to 4 days monthly due to her mental impairments. (Tr. 389).

Dr. Kefalas included a letter alongside his mental medical source statement. (Tr. 385–86). Plaintiff had no history of inpatient hospitalizations. (Tr. 385). Dr. Kefalas provided an expanded list of diagnoses: major depressive disorder, recurrent and generalized anxiety disorder, ADHD, panic disorder without agoraphobia, and personality disorder NOS. (Tr. 385). Dr. Kefalas also noted borderline personality features, depressive and negativistic personality characteristics, and narcissistic features exacerbated Plaintiff's depressive symptoms. (Tr. 385). Dr. Kefalas suggested that Plaintiff's past medications were minimally effective in managing her depression and anxiety, but that she recently was prescribed fluoxetine. (Tr. 385). Plaintiff also takes an ADHD medication to increase her ability to focus and an anti-anxiety medication as needed. (Tr. 385).

Dr. Kefalas opined that he does not believe Plaintiff "would be able to sustain competitive employment without experiencing impairments in regards to her mental health. Her work history has shown that she often changed jobs and struggled with tolerating normal stress levels associated with working." (Tr. 385). Dr. Kefalas noted Plaintiff has "difficulty with focusing and retaining information to perform daily duties while at work. If she did complete a task she would then struggle with insecurities and become easily frustrated by these thoughts, leading to what she reports as mistakes at work." (Tr. 385–86). Dr. Kefalas continued, noting Plaintiff "would often take frequent breaks due to being distracted. If there was anything at work that created anxiety for her

she would become avoidant of the task at hand and would again take breaks or find herself trying to hide in a bathroom or other secluded area to decrease her own anxiety level." (Tr. 386). Plaintiff is "avoidant of most social activities like grocery shopping as this creates anxiety and panic like symptoms." (Tr. 386). Plaintiff "lacks the self-confidence to ask questions when she is unsure of the task given to her and seeks frequent reassurance in her performance of the simplest tasks including questions for testing purposes." (Tr. 386).

The ALJ considered Dr. Kefalas's opinions, noting Dr. Kefalas "is an acceptable medical expert and he has a treating relationship with the claimant." (Tr. 27) (citing SSR 06-03p). The ALJ found Dr. Kefalas's opinions "grossly inconsistent with the overall mental health treatment, specifically with his own, in which the claimant is often noted as having generally normal mental status findings which suggests that her symptoms are well controlled through her medications." (Tr. 27). The ALJ continued, noting Plaintiff "has never had to seek emergency room care nor been hospitalized due to her mental health impairments, which one would expect to see given these types of limitations as described by Dr. Kefalas. As a result, these opinions receive less weight." (Tr. 27).

On March 2, 2016, Cindy Lee Thomas, MSW, LICSW, completed a mental medical source statement. (Tr. 391–94). Thomas noted Plaintiff's mental diagnoses are: ADHD: major depressive disorder – recurrent, moderate to severe without psychotic features; generalized anxiety disorder without agoraphobia but with increased propensity towards avoidance of social interactions; panic disorder; personality disorder NOS with borderline personality features, depressive and negativistic personality characteristics,

and narcissistic features. (Tr. 391). Thomas opined Plaintiff's prognosis was fair and also did not think Plaintiff was a malingerer. (Tr. 391).

In assessing Plaintiff's ability to sustain mental activities and a productive level of functioning at work or in a home environment, Thomas opined that Plaintiff had moderate restrictions in making simple work-related decisions, asking simple questions or requesting assistance, maintaining socially appropriate behavior, adhering to basic standards of neatness and cleanliness, being aware of normal hazards and taking appropriate precautions, and traveling in unfamiliar places or using public transportation. (Tr. 391–92). Thomas opined Plaintiff had marked restrictions in all other aspects, including remembering work-like procedures, understanding and remembering simple and detailed instructions, carrying out instructions, maintaining attention and concentration for more than two-hour segments, performing at a consistent pace, maintaining regular attendance, and working or interacting with others. (Tr. 391–92). With respect to identifying documentation of Plaintiff's deficiencies, Thomas wrote: "Poor concentration – easily dysregulated – social/interpersonal challenges – easily angered – easily overwhelmed – disorganized thinking – anxiety – social anxiety." (Tr. 392).

Thomas opined Plaintiff would need unscheduled breaks during the work day, writing that Plaintiff would find working an 8-hour day challenging given her "degree of dysregulation and poor coping skills." (Tr. 393). Thomas opined that Plaintiff would have over 3 days per month of absences due to her mental impairments. (Tr. 393). Thomas claimed Plaintiff had a "[m]edically-documented history of chronic organic mental,

schizophrenic, affective, or other disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do any basic work activity, with symptoms or signs currently attenuated by medication or psycho-social support," and a "residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicated to cause the individual to decompensate." (Tr. 393).

Thomas wrote a letter on June 15, 2016. (Tr. 481). Thomas noted Plaintiff reported poor concentration, a "hard time remembering directions and has the need to write things down that she wants to remember," finding paperwork exhausting, and is easily dysregulated. (Tr. 481).

The ALJ found Thomas's opinion concerning Plaintiff's marked limitations in understanding, remembering, and carrying out short, simple instructions and interacting with others to be "inconsistent with the claimant's ability to work her part-time job" and her ability to attend regular medical appointments without any identified increase in her mental health ailments. (Tr. 27). The ALJ also found Thomas's opinion that Plaintiff was unable to complete a normal workday or workweek without interruptions from her symptoms and therefore that she was likely to miss more than three days per month was "grossly inconsistent with the record as a whole, specifically her generally normal findings during office visits and therefore appears to be more based off her subjective complaints." (Tr. 27). The ALJ noted that if Plaintiff "were to perform work within the unskilled level, such as that described [in the RFC finding], her impairments are not likely to undergo exacerbation." (Tr. 27). Finally, the ALJ noted Thomas is not an

acceptable medical source, awarding the opinion "less weight." (Tr. 27) (citing SSR 06-03p).

### 1.        Examining and Treatment Relationship

Dr. Kefalas started treating Plaintiff following a March 13, 2014 psychiatric exam, seeing Plaintiff for 16 medication management appointments through June 15, 2016. Dr. Kefalas practices psychiatry and saw Plaintiff for medication management concerning her psychiatric needs. There is no dispute that Dr. Kefalas qualifies as a treating source given that he is a licensed physician. 20 C.F.R. §§ 404.1513(a), 416.913(a). Thus, Dr. Kefalas's examining and treatment relationships generally weigh in favor of his opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c).

While Thomas is not an acceptable medical source, she saw Plaintiff for psychotherapy, which is her normal area of practice. As noted below, Plaintiff only saw Thomas infrequently. Thus, while Thomas's examining relationship weighs in favor of her opinion, the treatment relationship weighs against it.

### 2.        Supportability and Consistency

The treatment record, including Dr. Kefalas's own interactions with Plaintiff, is inconsistent with Dr. Kefalas's opinions as to Plaintiff's limitations. The same is true with respect to Thomas's opinion. The medical record does not support their endorsement of severe and disabling limitations.

Plaintiff saw Dr. Terri Radovich on May 8, 2012 to establish care on, *inter alia*, a complaint of anxiety. (Tr. 337–343). Plaintiff reported "[d]epression and anxiety for years" and previous medications "helped the lows but 'made [her] feel kind of numb.'"

(Tr. 337). Plaintiff discussed that her home business—raising wax worms for sale on the internet—is stressful and that she had not been exercising. (Tr. 337–38). Plaintiff reported she could not sit still and had difficulties organizing and thinking. (Tr. 339). Dr. Radovich's impression was moderate recurrent depression and generalized anxiety disorder. (Tr. 340). Plaintiff was prescribed Celexa and Ativan and Dr. Radovich discussed the importance of regular exercise for helping depression. (Tr. 340–41).

Plaintiff saw Dr. Radovich on June 21, 2012 for follow-up, reporting that she was doing better on medication. (Tr. 333). Plaintiff seemed less anxious. (Tr. 335).

Over one year later, on September 12, 2013, Plaintiff saw Dr. Jack Carlisle, reporting increased anxiety and a history of depression. (Tr. 277). Plaintiff wanted a mental health evaluation. (Tr. 277). She said she was irritable and wondered if she suffered from bipolar illness, noting that she had highs and lows. (Tr. 277). On examination, Plaintiff was anxious, "tearful at times, and will laugh at times." (Tr. 278). Plaintiff was referred to psychiatry and provided refilled prescriptions of citalopram and lorazepam "because of significant anxiety." (Tr. 280).

Plaintiff saw Dr. Kefalas for a psychiatric exam on March 13, 2014. (Tr. 364–66). Plaintiff recounted a 15 to 17-year history of depression, as well as a history of panic symptoms and anxiety. (Tr. 364). Plaintiff reported a racing mind, forgetfulness, difficulty focusing and sustaining attention, and alternating feelings of happiness and crying. (Tr. 364). Plaintiff endorsed a history of anhedonia, feeling sad, insomnia, low energy, appetite disturbance, low self-esteem, difficulty with concentration, and restlessness. (Tr. 364). Plaintiff was normal on examination. (Tr. 365). Dr. Kefalas's

diagnosis was: major depressive disorder, recurrent, moderate; and generalized anxiety disorder. (Tr. 365). Plaintiff was to discontinue her citalopram, begin venlafaxine, and continue lorazepam. (Tr. 365). Plaintiff was also referred to individual therapy. (Tr. 365).

Plaintiff saw Thomas for individual therapy on April 2, 2014. (Tr. 367). Plaintiff was tearful and had limited eye contact, but she engaged in therapy. (Tr. 367).

Plaintiff saw Dr. Kefalas for medication management on May 19, 2014. (Tr. 362–63). Plaintiff reported improved mood. (Tr. 362). Plaintiff reported "she would not be following up [with Thomas] but stated it was helpful." (Tr. 362). Plaintiff was normal on examination, except she had minimally restricted affect. (Tr. 362). Dr. Kefalas found Plaintiff's mental impairments were improved. (Tr. 362).

Plaintiff saw Dr. Kefalas for medication management on June 4, 2014. (Tr. 361). Plaintiff reported cancelling her therapy appointment with Thomas and "is not sure she will be following up." (Tr. 361). Dr. Kefalas explained that "sometimes therapy can be stressful and there may be an increase of symptoms before there is a general improvement." (Tr. 361). On examination Plaintiff was normal and Dr. Kefalas found no change in Plaintiff's mental impairments. (Tr. 361). Plaintiff was prescribed Vyvanse and was to continue her other medications. (Tr. 361).

Plaintiff saw Dr. Kefalas for medication management on June 26, 2014. (Tr. 360). Plaintiff reporting feeling good and that her mood was good. (Tr. 360). Dr. Kefalas found Plaintiff's mental impairments were improved. (Tr. 360).

Dr. Donald Farnsworth conducted a psychological evaluation of Plaintiff on May 19 and completed his report on June 30, 2014. (Tr. 345–58). Plaintiff reported being

diagnosed with depression 20 years prior and receiving medication management since that time, noting her depression has "ebbed and flowed periodically over the last 20 years." (Tr. 348). Plaintiff initially denied any significant change in psychiatric functioning over the last years, but later reported a gradual increase in symptoms "which appears related to geographic isolation resulting in reduced social interactions." (Tr. 348). Plaintiff noted her current medications from Dr. Kefalas were somewhat effective in reducing symptoms of anxiety and depression, but reported she continues to experience panic-like symptoms, severe anxiety, and mood fluctuations. (Tr. 348). Plaintiff reported seeing Thomas for therapy and that it was going well. (Tr. 348). Plaintiff "expressed no desire for permanent or fulltime employment at present." (Tr. 348).

Dr. Farnsworth observed that Plaintiff demonstrated adequate motivation, attitude, and effort, and her frustration tolerance was within normal limits. (Tr. 349, 355). Plaintiff appeared to have reduced confidence, making comments about how poorly she was doing even when she was doing well. (Tr. 349, 355). Plaintiff showed "some moderate signs of inattention, especially in tasks which were more complicated where she would forget more readily." (Tr. 349, 355). She had no remarkable signs of hyperactivity. (Tr. 349, 355). Plaintiff demonstrated pronounced anxiety as indicated by concern over her performance. (Tr. 349, 355). Plaintiff appeared to understand the directions of testing. (Tr. 349).

Dr. Farnsworth was "of the impression that much of Denise's current psychiatric presentation is of long-standing duration . . . ." (Tr. 356). But her psychiatric symptoms "are increasing in severity over the last several years partially as a result of the death of

[her partner's] grandson but also seemingly related to continued social isolation wherein Denise [and her partner] live in a rural area and only come to town infrequently." (Tr. 357). Dr. Farnsworth's diagnostic impression was: ADHD; major depressive disorder, recurrent, moderate to severe without psychotic features; generalized anxiety disorder; panic disorder without agoraphobia but with increasing propensity towards avoidance of social interactions; personality disorder NOS with borderline personality features, depressive and negativistic personality characteristics, and narcissistic features. (Tr. 357). Dr. Farnsworth's recommendations were that Plaintiff would benefit from continued psychiatric medication management services and individual psychotherapy. (Tr. 358). Dr. Farnsworth opined that the "ruminative/cognitive nature of Denise's psychiatric presentation is likely to be more resistant to psychiatric medication and more amenable to individual psychotherapy." (Tr. 357).

Plaintiff saw Dr. Kefalas for medication management on August 5, 2014. (Tr. 359). Plaintiff was "not seeing a therapist and is not receptive to seeing a therapist." (Tr. 359). Plaintiff reported visiting her mother in Illinois and "had a good time," meeting many friends and family members. (Tr. 359). Plaintiff reported her partner continues to have problems with the business and that she "helps out as much as she can." (Tr. 359). Plaintiff reported her mood was "fairly good." (Tr. 359). Dr. Kefalas found Plaintiff's mental impairments were stable. (Tr. 359). Plaintiff was to continue her Vyvanse and lorazepam; her Effexor was increased. (Tr. 359).

Plaintiff completed a function report on August 26, 2014. (Tr. 205–12). Plaintiff reported it "impossible to do everyday ordinary tasks that are even slightly stressful.

[She] can't think straight because [she is] overwhelmed with anxiety & become dizzy or sick to [her] stomach. [She] cannot remember what [she is] supposed to do." (Tr. 205). Plaintiff reported being able to pay attention for only one minute. (Tr. 210). Plaintiff described her ability to follow written and spoken instructions as "fair." (Tr. 210). Plaintiff watches TV, plays on the computer, fishes, and engages in photography. (Tr. 206, 209). Plaintiff interacts with others on the computer and phone once per day and visits the store and community center two to four times per month. (Tr. 208–09).

Plaintiff saw Thomas for individual therapy on October 1, 2014, (Tr. 382), and Dr. Kefalas for medication management later that day, (Tr. 383). Plaintiff reported the Vyvanse has been working well for her ADHD. (Tr. 383). On examination, Plaintiff was normal but had minimally restricted affect at times. (Tr. 383). Dr. Kefalas found Plaintiff was doing relatively well. (Tr. 383).

Plaintiff saw Dr. Kefalas for medication management December 3, 2014. (Tr. 384). Plaintiff reported "she still has problems with memory . . . due to her ADHD," and that her Effexor is no longer being as effective as it was but that she "wants to give it a little more time." (Tr. 384). Plaintiff reported some anxiety. (Tr. 384). Dr. Kefalas found no change in Plaintiff's mental impairments; Plaintiff was to continue her medications and see Thomas for individual therapy. (Tr. 384).

On February 4, 2015, Plaintiff saw Thomas for individual therapy. (Tr. 396). Plaintiff "discusse[d] a Facebook page she created about spreading kindness. . . . [She] report[ed] that she is planning an excursion to Bemidji in June to do acts of kindness." (Tr. 396). Later that day, Plaintiff saw Dr. Kefalas for medication management. (Tr. 395).

Plaintiff reported losing her Vyvanse prescription, so she took her existing supply in lower doses to make it last. (Tr. 395). Plaintiff reported her Effexor no longer helped for depression. (Tr. 395). On examination, Plaintiff showed some impulsivity and appeared to have difficulty with attention but was otherwise normal. (Tr. 395). Dr. Kefalas found Plaintiff had an increase of depressive symptoms, switching her to Fluoxetine from Effexor. (Tr. 395).

On March 4, 2015, Plaintiff saw Dr. Kefalas for medication management. (Tr. 397). Plaintiff reported experiencing more anxiety, noting there was difficulty with county assistance. (Tr. 397). Plaintiff reported difficulties with her memory. (Tr. 397). On examination, Plaintiff's speech had an anxious tone and appeared anxious, but was otherwise normal. (Tr. 397). Dr. Kefalas prescribed clonazepam and increased her Vyvanse. (Tr. 397).

Plaintiff saw Dr. Kefalas for medication management on April 1, 2015. (Tr. 398). Plaintiff was anxious for a week awaiting her Vyvanse. (Tr. 398). On examination, Plaintiff was normal and Dr. Kefalas found that Plaintiff improved overall. (Tr. 398).

Plaintiff saw Dr. Kefalas for medication management on May 20, 2015. (Tr. 399). Plaintiff reported some "goal directed activity" when she takes Vyvanse but it wears off and she feels tired, but that this is "not a major problem for her." (Tr. 399). Plaintiff was normal on examination and Dr. Kefalas found her to be stable. (Tr. 399).

On July 15, 2015, Plaintiff saw Thomas for therapy. (Tr. 401). Plaintiff reported she had a "difficult three week[s] in Illinois." (Tr. 401). Thomas found Plaintiff "highly emotional and has fear of losses and disappointments." (Tr. 401). Plaintiff engaged in

therapy; she was tearful but otherwise presented with appropriate affect. (Tr. 401). Plaintiff saw Dr. Kefalas for medication management that same day. (Tr. 400). Plaintiff reported her trip to Illinois did not go well, noting issues with filling her prescriptions while there. (Tr. 400). Plaintiff "stated that she does not want to be overmedicated." (Tr. 400). On examination, Plaintiff "appeared to be in near tears at times," but was otherwise normal. (Tr. 400).

On September 9, 2015, Plaintiff saw Thomas for therapy. (Tr. 403). Thomas noted no treatment plan was completed as Plaintiff "did not seem interested in more frequent sessions to address her triggers." (Tr. 403). Plaintiff saw Dr. Kefalas later that day. (Tr. 402). Plaintiff reported "episodes of sadness" and that she was compliant with medication. (Tr. 402). On examination, Plaintiff was normal. (Tr. 402). Dr. Kefalas found no change in Plaintiff's mental impairments. (Tr. 402).

Plaintiff saw Dr. Kefalas for medication management on October 19, 2015. (Tr. 404). Plaintiff reported feeling more depressed. (Tr. 404). Dr. Kefalas asked Plaintiff to see Thomas for therapy. (Tr. 404). On examination, Plaintiff was tearful and her concentration appeared reduced, but she was otherwise normal. (Tr. 404). Dr. Kefalas found Plaintiff had an increase in depressive symptoms so he increased Plaintiff's fluoxetine prescription. (Tr. 404).

Plaintiff saw Dr. Kefalas for medication management on November 10, 2015. (Tr. 405). Plaintiff reported doing online research and believing that she has bipolar symptoms, reporting feeling elevated mood with increased energy that last a half to a full day. (Tr. 405). On examination, Plaintiff appeared to have a sad affect when discussing

her stressor at times, but was otherwise normal. (Tr. 405). Dr. Kefalas prescribed lamotrigine for mood stabilization. (Tr. 405).

Plaintiff saw Dr. Kefalas for medication management on December 2, 2015. (Tr. 406). Plaintiff reported she believed the mood stabilizer was helping her. (Tr. 406). Plaintiff reported being anxious about an upcoming Social Security hearing. (Tr. 406). On examination, Plaintiff was normal; Dr. Kefalas found mild improvement in Plaintiff's ailments. (Tr. 406).

Plaintiff saw Thomas for individual therapy on January 13, 2016. (Tr. 407). Plaintiff was tearful throughout the session. (Tr. 407). Plaintiff reported that her mood stabilizer has been helpful. (Tr. 407).

Plaintiff saw psychiatric nurse specialist Tom Johnson for medication management on February 17, 2016. (Tr. 408–09). Plaintiff was in a hurry and somewhat flustered. (Tr. 408). Plaintiff reported her medications were working well. (Tr. 408). Plaintiff denied any problems with mood. (Tr. 408). On examination, Plaintiff's mood was anxious but she was otherwise normal. (Tr. 408).

Plaintiff underwent a diagnostic assessment with Thomas on April 6, 2016. (Tr. 472–80). Plaintiff requested the diagnostic assessment because she was seeking disability recognition. (Tr. 472). Plaintiff reported depressive symptoms every day nearly all day; insomnia; a lack of interest in things she enjoys; suicidal ideation; anxiety/social anxiety; poor concentration; dysregulation; easily angered; overwhelmed; and mental disorganization. (Tr. 473). On examination, Plaintiff's attitude was cooperative and guarded; affect was labile, anxious/worrisome, and sad; motor activity was fidgety and

restless/agitated; mood was depressed, irritable, and anxious; speech was easily understood and excessive; thought process had flight of ideas; no obvious problems with orientation; was at times a poor historian with respect to memory; cognitive function was fair; no problems observed with abstraction; judgment was fair; and insight was impaired and blamed others. (Tr. 474–76). Plaintiff reported that she felt "10% whole," was weepy all the time, had poor concentration and had "not read a book in 20 years," that she hyperventilates and becomes shaky or cries when she becomes anxious, that she gets confused a lot and has poor memory, and that she gets lost easily. (Tr. 477). Thomas found Plaintiff would continue to benefit from individual psychotherapy and medication management. (Tr. 477, 479). Thomas noted that "[m]aladjusted thoughts regarding life situations may be contributing to symptoms." (Tr. 479). Thomas' prognosis "for thoughts to be identified[,] challenged[,] and reconstructed in a healthier manner" was "fair to good, depending on client[']s commitment to therapy and other services." (Tr. 479). Thomas wrote:

> It is my professional opinion that this person meets the State of Minnesota definition of a person with a serious and persistent mental illness in that the adult meets the criteria for Major Depressive Disorder with significant impairment in functioning and is reasonably likely to have future episodes requiring IP residential treatment or hospitalization. Functioning in the following areas has declined or worsened as a result of the symptoms of the above disorder. ADL's, Mental Health Symptoms, Mental Health Services Needs, Social and Interpersonal Functioning."

(Tr. 480).

Plaintiff saw Dr. Kefalas for medication management on April 11, 2016. (Tr. 410). Plaintiff reported "that she is still experiencing a lot of depression and anxiety."

(Tr. 410). Plaintiff reported the clonazepam works well for her anxiety. (Tr. 410). On examination, Plaintiff appeared to be in good spirits. (Tr. 410). Dr. Kefalas found Plaintiff to be at her baseline and this would continue with her present medications. (Tr. 410).

Plaintiff saw Dr. Kefalas for medication management on June 15, 2016. (Tr. 494–95). On examination, Plaintiff was very talkative and had some lability of affect, but was otherwise normal. (Tr. 494). Dr. Kefalas found Plaintiff to be at baseline and should continue her current medications. (Tr. 494).

Plaintiff testified at the administrative hearing on July 20, 2016. (Tr. 35–67). Plaintiff testified that for two years she has worked a three-hour shift for one night a week as a bingo caller for a snowmobile club. (Tr. 41, 48–49, 60–61). Plaintiff testified that she aids her boyfriend's wax worm business a couple hours every other day. (Tr. 41–42). Plaintiff testified having hour-long panic attacks once a week. (Tr. 46–48).

As this exhaustive review of the medical records show, and as the ALJ noted, Plaintiff had generally normal mental status findings and her mental health impairments have been well managed through her current treatment. Only twice did Dr. Kefalas find an increase in Plaintiff's depressive symptoms while treating her—February 4, 2015 and October 19, 2015—and both instances resulted in changes to Plaintiff's medication which in turn improved or stabilized symptoms at follow-up visits.[3] *See Julin v. Colvin*, 826 F.3d 1082, 1087 (8th Cir. 2016) ("That Julin's medication was effective in relieving her

---

[3] Moreover, the February 2015 increasein symptoms came after Plaintiff was non-compliant with her medication regimen because she had lost her prescription, resulting in taking lower doses of medication to stretch it out.

symptoms further supports the ALJ's finding that Julin's complaints of disabling depression were not fully credible."). Moreover, Plaintiff repeatedly reported to other providers that her medications from Dr. Kefalas were aiding her. *See id.* ("Julin reported on many occasions that prescribed medications eased her symptoms. . . . Although Dr. Welsh's treatment notes reflect that Julin discussed severe or worsening symptoms on other occasions, the evidence overall supports a determination that the medication alleviated Julin's symptoms."). Similarly, even though Plaintiff was recalcitrant to engage in more frequent therapy with Thomas, she extolled the benefits of her therapy sessions and participated fully. Such mental health improvement is consistent with the evaluation performed by Dr. Farnsworth which noted that Plaintiff would improve via continued medication management and therapy. *See Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("An impairment which can be controlled by treatment or medication is not considered disabling.").

As Dr. Farnsworth also noted, however, the nature of Plaintiff's ailments were such that therapy would be more helpful than medication. Plaintiff saw Thomas minimally and infrequently. This infrequent contact is starkly contrasted by the regularity with which Plaintiff saw Dr. Kefalas for medication management. This infrequency of treatment for allegedly disabling mental health impairments is further matched from Plaintiff's treatment pre-dating Dr. Kefalas's involvement. Plaintiff saw Dr. Radovich in May and June 2012, and did not see Dr. Carlisle until September 2013, after which she began seeing Dr. Kefalas in March 2014. Plaintiff's inconsistent treatment, particularly with respect to the recommended psychotherapy, and the long gaps in treatment detract

from the disabling limitations opined by Dr. Kefalas and Thomas. *See Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003).

Thomas and Dr. Kefalas opined that Plaintiff had marked restrictions in a wide-range of work-like areas, including remembering work-like procedures, understanding and remembering simple and detailed instructions, carrying out detailed instructions, maintaining attention and concentration for more than two-hour segments, and performing activities within a schedule or maintaining regular attendance. These limitations are inconsistent with Plaintiff's self-reported activities of operating a bait shop/wax worm business with her significant other, her regular and consistent part-time work calling bingo, regular computer use, and regularly watching television. Plaintiff's ability to work with her impairments shows they are not as disabling as alleged, detracting from the opinions of Dr. Kefalas and Thomas. *See Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). Additionally, these limitations are not supported by Dr. Farnsworth's testing, where he found Plaintiff's frustration tolerance was within normal limits, only moderate signs of inattention with complicated tasks, no remarkable signs of hyperactivity, and an understanding of the directions. This occurred via testing lasting some 6.75 hours, (Tr. 345), a time period much longer than the two-hour concentration limits opined by Dr. Kefalas and Thomas or the one-minute time span Plaintiff testified to.

Other inconsistencies are found in the opinions and the record. Thomas opined Plaintiff has moderate restrictions in adhering to basic standards of neatness and cleanliness, but not once in the record do any of Plaintiff's treatment providers indicate

Plaintiff demonstrated difficulties in maintaining hygiene, inappropriate grooming, or improper dress. Dr. Kefalas opined that Plaintiff's medications were ineffective. As discussed above, this opinion is contradicted by the confirmations of both Plaintiff and Dr. Kefalas as to the effectiveness of her medications and Plaintiff's positive response to her medications.

While not directly tied to the analysis of the opinions of Dr. Kefalas and Thomas, Plaintiff argues that the ALJ failed to take into account her "exemplary work history." (ECF No. 15, at 24). As such, Plaintiff appears to argue that the opinions of Dr. Kefalas and Thomas were improperly weighed insofar as their opinions and her subjective symptoms buttress one another. (ECF No. 15, at 24). Contrary to Plaintiff's argument, the ALJ considered Plaintiff's work history—including her part-time work while she was allegedly disabled. (Tr. 28–29). To the extent Plaintiff asserts her work history affects her credibility positively, it is belied by the record. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) ("The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians . . . ."). On March 13, 2014, Plaintiff told Dr. Kefalas

> she has held a variety of jobs in the past. She states that shortly after graduating high school she worked at a factory then at a fast food restaurant, then at a currency exchange office. She reports then working in bill collections for a discount store and then worked on a military base in inventory control. She reports working at an insulin pump company and was involved in sales, billing, as well as a credit analyst. Most recently, she worked at a hospital in the cities and was involved with ambulance billing. She stated that her longest job was for four years and that most of her jobs she ended up quitting.

(Tr. 364). Plaintiff similarly reported to Thomas that, "[h]istorically, the longest [she] has held a job was 4 years." (Tr. 478). While Plaintiff argues that her work history supports her claim of disabling impairments, it supports the contrary. Plaintiff told providers that her mental health impairments have lasted nearly twenty years, well prior to her departure from the work force. This means that Plaintiff was able to successfully work with her mental impairments for an appreciable amount of time. *See Roberts*, 222 F.3d at 469 ("The ALJ noted that Roberts successfully had held employment for many years with the cognitive abilities he currently possesses.").

In sum, the medical record does not support the severe limitations opined by Dr. Kefalas and Thomas. Rather, the medical record shows generally normal and improving mental health findings and ailments that were treated and managed via medication and infrequent therapy. The ALJ's weighing of the unsupported medical opinions was not in error and was supported by substantial evidence in the record as a whole.

## IV.    CONCLUSION

Based upon the record, memoranda, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 14), is **DENIED**, Defendant's Motion for Summary Judgment, (ECF No. 21), is **GRANTED**, and this matter is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: December 7, 2018                              _____*/s Steven E. Rau*_____
                                                   Steven E. Rau
                                                   United States Magistrate Judge
                                                   District of Minnesota